Daniel C. Girard (State Bar No. 114826)
Jordan Elias (State Bar No. 228731)
Adam E. Polk (State Bar No. 273000)
Simon Grille (State Bar No. 294914)
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: dgirard@girardsharp.com
Email: jelias@girardsharp.com
Email: apolk@girardsharp.com
Email: sgrille@girardsharp.com

*Counsel for Plaintiff*

*Additional Counsel on Signature Page*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER RODRIGUEZ on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ACCELLION, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Heather Rodriguez ("Plaintiff"), individually and on behalf of the proposed class described below, brings this action against Defendant Accellion, Inc. ("Accellion") for injunctive relief and damages, and alleges as follows:

## I. SUMMARY OF THE ACTION

1. This action arises out of Accellion's failure to secure sensitive information stored on its Accellion FTA (File Transfer Appliance) product.

2. Entities such as government agencies, businesses, law firms, and universities hired Accellion—a cloud solutions company—to collect and securely transfer personally identifiable information ("PII"), including applications for unemployment benefits and personal health data. In December 2020, Accellion detected a breach of its electronic information systems that compromised millions of people's most sensitive information (the "Data Breach"). Exposed PII includes, without limitation, names, social security numbers, driver's license or state identification numbers, birth dates, bank account numbers, bank routing numbers, places of employment, and personal health and insurance information.

3. On its website, Accellion boasts that it "enables millions of executives, employees, customers, vendors, partners, investors, attorneys, doctors, patients, and professionals from every walk of life to do their jobs without putting their organization at risk. When they click the Accellion button, they know it's the safe and secure way to share information with the outside world."[1] Accellion thus knew or should have known that its customers would use its Accellion FTA service to store and transfer large quantities of highly sensitive PII.

4. While Accellion blames its own customers for the breach, claiming that they should have upgraded to one of Accellion's newer products, Plaintiff and the proposed class—already faced with difficulties presented by the financial impact of the COVID-19 crisis—now must deal with the fallout of unauthorized access to their PII. Plaintiff has already experienced instances of identity theft, including fraudulent charges made in her name.

5. Plaintiff seeks compensatory damages together with injunctive relief to remediate Accellion's deficient cyber security protocols, to provide credit monitoring, and to provide identity

---

[1] https://www.accellion.com/platform/simple/secure-third-party-communication/ (last visited February 21, 2021).

theft insurance and credit repair services for life to protect her and class members from identity theft and fraud.

## II. PARTIES

6. Plaintiff Heather Rodriguez is a resident of Bellingham, Washington. She applied for unemployment benefits with the state of Washington in March 2020. Since then, she has discovered fraudulent charges made to Apple, Amazon, Google, and Roku on her USAA bank account. She did not authorize any of these charges. She has not received unemployment payments from the state of Washington since December 19, 2020.

7. Accellion, Inc. is a Delaware Corporation with its principal place of business in Palo Alto, California.

## III. RELATED ACTIONS AND INTRADISTRICT ASSIGNMENT

8. This case arises out of the same or similar operative facts as *Brown v. Accellion, Inc.*, No. 21-cv-01155-EJD (N.D. Cal.) and *Zebelman v. Accellion, Inc.,* No. 21-cv-01203-YGR (N.D. Cal.).

9. Assignment to the San Jose Division is appropriate under Local Rule 3-2(c) because Accellion is headquartered in Palo Alto, California, and a substantial part of the events which give rise to this claim occurred in Santa Clara County.

## IV. JURISDICTION AND VENUE

10. This Court has jurisdiction over the lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Accellion and class members are domiciled in different states.

11. The Court has personal jurisdiction over Accellion because its principal place of business is within this District and it has sufficient minimum contacts in California to render the exercise of jurisdiction by this Court proper and necessary.

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

V.     **FACTUAL ALLEGATIONS**

**The Accellion Data Breach**

13.    Accellion is a cloud solutions company that provides an enterprise content firewall it represents "prevents data breaches and compliance violations from third party cyber risk."[2] Accellion holds itself out as providing a platform that ensures that personally identifiable information ("PII") can be securely transmitted between people.

2.     According to Accellion:

> the Accellion content firewall provides the security and governance CISOs need to protect their organizations, mitigate risk, and adhere to rigorous compliance regulations . . . . Accellion solutions have protected more than 25 million end users at more than 3,000 global corporations and government agencies, including NYC Health + Hospitals; KPMG; Kaiser Permanente; National Park Service; Tyler Technologies; and the National Institute for Standards and Technology (NIST).[3]

14.    Accellion acknowledges in its privacy policy that it "control[s] information that is provided directly to [it]," and further states that it "takes appropriate steps to ensure data privacy and security including through various hardware and software methodologies."[4] Nevertheless, those methodologies proved inadequate to prevent hackers from breaching its servers and taking Plaintiff's and class members' highly sensitive personal information.

15.    In mid-December, Accellion learned of a security vulnerability in its Accellion FTA software—a product that specializes in large file transfers.

16.    As a result of the security vulnerability, Accellion FTA was the subject of a cyberattack that continued into January 2021. Unauthorized third parties gained access to vast amounts of data, including PII, stored on or being transferred through Accellion FTA.

17.    Accellion reports that less than 50 of its customers were affected by the cyberattack.

18.    Accellion claims that it resolved the vulnerability and released a patch within 72 hours of learning of the problem. Accellion, however, later identified additional exploits and had to develop additional patches to close those vulnerabilities.

---

[2] https://www.accellion.com/company/ (last visited Feb. 22, 2021).
[3] *Id.*
[4] https://www.accellion.com/privacy-policy/ (last visited Feb. 22, 2021).

19. In the wake of the incident, Accellion has stated that the Data Breach occurred on Accellion FTA, which it describes as a "20 year old product nearing end-of life" and "encouraged all FTA customers to migrate to kiteworks." Accellion also has stated its intent to "accelerate[] our FTA end-of-life plans in light of these attacks."[5]

20. Accellion has attempted to deflect responsibility for the incident. It states that it has encouraged its customers to upgrade their platform for three years.

21. Accellion has also represented that its "customers were promptly notified of the attack on December 23, 2020."[6] But its customers report learning of the breach after this date.

### Initial Reports of Breached PII

22. On January 15, 2021, the Australian Securities and Investments Commission (ASIC) learned that its data had been compromised as a result of the Data Breach. An unidentified actor accessed an ASIC server containing credit license applications between July 1, 2020 and December 28, 2020.

23. On or around January 15, 2021, the Reserve Bank of New Zealand reported that its data was compromised by the Data Breach. The governor of the bank described the Data Breach as significant.

24. During the week of February 1, 2021, the Washington State Auditor's Office announced that it had discovered unauthorized access to a variety of files held in Accellion's systems, including:

- "Personal information of people who filed for unemployment claims from Jan. 1 to Dec. 10, 2020. This group includes many state employees, as well as people whose identity was used to file for claims fraudulently in early 2020. SAO auditors were reviewing all claims data as part of an audit of that fraud incident. This affects about 1.6 million people."
- "Personal information of a smaller number of people, including data held by the Department of Children, Youth and Families."

---

[5] https://www.accellion.com/company/press-releases/accellion-provides-update-to-recent-fta-security-incident/ (last visited Feb 22, 2021).
[6] *Id.*

4
CLASS ACTION COMPLAINT

- "Non-personal financial and other data from local governments and state agencies."[7]

25. The compromised information is "voluminous" according to the state of Washington, and includes "unemployment compensation claim information including the person's name, social security number and/or driver's license or state identification number, date of birth, bank account number and bank routing number, and place of employment."

26. Though (according to its website) Accellion detected the Data Breach in "mid-December," it failed to notify the state of Washington that it had confirmed unauthorized access to the state's files until January 25, 2021.

27. The Washington State Auditor's Office states that it was only recently made aware of the data breach by Accellion:

> The Office of the Washington State Auditor ("SAO") was recently made aware of a security breach involving Accellion, a third party provider of hosted file transfer services. During the week of January 25, 2021, Accellion confirmed that an unauthorized person gained access to SAO files by exploiting a vulnerability in Accellion's file transfer service.[8]

28. The Data Breach has resulted in delays in people obtaining unemployment benefits, and reports of identity theft and fraudulent unemployment claims have already emerged.

29. The Data Breach occurred amidst the COVID-19 pandemic, adding to the troubles of those already facing unemployment due to the pandemic. According to Washington State Auditor Pat McCarthy, "I know this is one more worry for Washingtonians who have already faced unemployment in a year scarred by both job loss and a pandemic. . . This is completely unacceptable. We are frustrated and committed to doing everything we can to mitigate the harm caused by this crime."[9]

30. The information stolen includes personal information that cannot feasibly be changed, and over which Plaintiff and class members have lost control of indefinitely as a result of the hack.

---

[7] https://sao.wa.gov/breach2021/ (last visited Feb. 22, 2021).
[8] https://sao.wa.gov/breach2021/ (last visited Feb. 22, 2021).
[9] https://www.geekwire.com/2021/data-breach-exposes-1-6-million-washington-state-residents-filed-unemployment-claims-2020/ (last visited Feb. 22, 2021).

**Reports of Breached PII Continue to Emerge**

31. Since the report of the initial Accellion breaches, the scope and scale of the Data Breach has continued to expand.

32. On February 1, 2021, the University of Colorado ("CU") announced that its files were also compromised by the Data Breach and that "personally identifiable information from students, employees, and others may have been compromised."[10] In the announcement CU confirmed that the breach resulted from its use of Accellion FTA. The breach affected data from multiple CU campuses.

33. While CU has not determined the full scope of data exposed, "early information confirms that the [Accellion] vulnerability was exploited and multiple data types may have been accessed, including CU Boulder and CU Denver student personally identifiable information, prospective student personally identifiable information, employee personally identifiability information, limited health and clinical data, and study and research data."[11]

34. On February 17, 2021, Singtel, a telephone company in Singapore, announced that it was another one of Accellion's customers affected by the Data Breach. Singtel reports that the personal information of about 129,000 of its customers was stolen due to the breach.

35. QIMF Berghofer, an Australian medical research institute was also affected by the breach. While unauthorized actors reportedly accessed this information on December 25, 2020, the first notification QIMF Berghofer received from Accellion was on January 4, 2021.

36. On February 16, the Wall Street Journal reported that global law firm Jones Day was compromised by the breach. A hacker who goes by the name "Clop" claims to have obtained over 100 gigabytes of data from Jones Day. The hacker posted some of the documents, which include confidential litigation documents.

37. The law firm Goodwin Proctor also had its data exposed to unauthorized third parties as a result of the Accellion breach.

38. On February 20, reports emerged that supermarket chain Kroger was affected by the Accellion breach. The breach may have involved personal health and insurance information used at

---

[10] https://www.cu.edu/accellion-cyberattack (last visited Feb. 22, 2021).
[11] *Id.*

Kroger pharmacies, including social security numbers. Accellion informed Kroger of the breach on January 23.

39. Plaintiff has recently been the victim of fraudulent activity on her bank account, which indicates that the fraudulent activity was a direct and proximate result of the Data Breach.

## VI. CLASS ACTION ALLEGATIONS

40. Plaintiff brings this lawsuit as a class action on her own behalf and on behalf of all other persons similarly situated as members of the proposed Class, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and/or (b)(1), (b)(2), and/or (c)(4). This action satisfies the numerosity, commonality, typicality, predominance, and superiority requirements.

41. The proposed Class is defined as:

> All United States citizens and residents whose PII was exposed to unauthorized third parties as a result of the security vulnerability in Accellion FTA that occurred between December 2020 and January 2021.

Plaintiff reserves the right to modify, change, or expand the Class definition, including proposing additional subclasses, based on discovery and further investigation.

### Numerosity and Ascertainability

42. The size of the Class can be estimated with reasonable precision, and the number is great enough that joinder is impracticable.

43. The number of Class members is over 1.5 million. The disposition of their claims in a single action will provide substantial benefits to all parties and to the Court.

44. Class members are readily ascertainable from information and records in the possession, custody, or control of Defendant or its customers. Notice of this action can be readily provided to the Class.

### Typicality

45. Plaintiff's claims are typical of the claims of the Class in that the sensitive personal information of the representative Plaintiff, like that of all Class members, was compromised in the Data Breach.

**Adequacy of Representation**

46. Plaintiff is a member of the proposed Class and will fairly and adequately represent and protect its interests. Plaintiff's counsel are competent and experienced in class action and privacy litigation and will pursue this action vigorously. Plaintiff has no interests contrary to or in conflict with the interests of Class members.

**Predominance of Common Issues**

47. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Class are:

    a. Whether Accellion had a duty to implement reasonable cyber security measures to protect Plaintiff's and Class members' sensitive, personal information and to promptly alert them if such information was compromised;

    b. Whether Accellion breached its duties by failing to take reasonable precautions to protect Plaintiff's and Class members' sensitive, personal information;

    c. Whether Accellion acted negligently by failing to implement reasonable data security practices and procedures;

    d. Whether Accellion violated Wash. Rev. Code Ann. § 19.255.010(1) by failing to promptly notify Plaintiff and Class members that their sensitive, personal information had been compromised in the Data Breach;

    e. Whether Accellion's failures to implement reasonable data security practices and procedures and to timely notify Plaintiff and Class members of the Data Breach violates Washington's Consumer Protection Act, Wash. Rev. Code Ann. § 19.86.020, *et seq.*

**Superiority**

48. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would have no effective remedy. Because of the relatively small size of the individual Class members' claims, it is likely that few, if any, Class members could afford to seek redress for Accellion's violations.

8
CLASS ACTION COMPLAINT

49. Class treatment of common questions of law and fact would also be a superior method to piecemeal litigation in that class treatment will conserve the resources of the courts and will promote consistency and efficiency of adjudication.

50. Classwide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2) because Accellion has acted on grounds that apply generally to the Class, and inconsistent adjudications would establish incompatible standards and substantially impair the ability of Class members and Accellion to protect their respective interests. Classwide relief assures fair, consistent, and equitable treatment of Class members and Accellion.

## FIRST CAUSE OF ACTION
### Negligence

51. Plaintiff incorporates the above allegations as if fully set forth herein.

52. Accellion collected and stored the personal information of Plaintiff and Class members, including their names, social security numbers, driver's license or state identification numbers, birth dates, bank account numbers, bank routing numbers, places of employment, and personal health and insurance data. Accellion owed Plaintiff and Class members a duty of reasonable care to preserve and protect the confidentiality of their personal information that they collected. This duty included, among other obligations, maintaining and testing their security systems and computer networks, and taking other reasonable security measures to safeguard and adequately secure the personal information of Plaintiff and the Class from unauthorized access and use.

53. Plaintiff and Class members were the foreseeable victims of Accellion's inadequate cyber security. The natural and probable consequence of Accellion's failing to adequately secure their information networks was the unauthorized access of Plaintiff's and Class members' personal information.

54. Accellion knew or should have known that Plaintiff and Class members' personal information was an attractive target for cyber thieves, particularly because of the recent data breaches experienced by other entities around the United States.

55. Accellion has the ability to sufficiently guard against data breaches by implementing adequate measures to protect their systems, such as removing the legacy Accellion FTA software from the market and updating to a state of the art and current file transfer software.

56. Accellion breached its duty to exercise reasonable care in protecting Plaintiff's and Class members' personal information, by failing to implement and maintain adequate security measures to safeguard Plaintiff's and Class members' personal information, failing to monitor their systems to identify suspicious activity, and allowing unauthorized access to Plaintiff's and Class members' personal information.

57. Under Wash. Rev. Code Ann. § 19.255.010(1), Accellion also owed a duty to timely disclose to Plaintiff and Class members that their personal information had been or was reasonably believed to have been compromised.  Timely disclosure was necessary so that Plaintiff and Class members could, among other things: (1) purchase identity protection, monitoring, and recovery services; (2) flag asset, credit, and tax accounts for fraud, including by reporting the theft of their social security numbers to financial institutions, credit agencies, and the IRS; (3) purchase or otherwise obtain credit reports; (4) place or renew fraud alerts on a quarterly basis; (5) routinely monitor loan data and public records; and (6) take other steps to protect themselves and recover from identity theft.

58. Accellion breached its duty to timely disclose the Data Breach to Plaintiff and Class members.  After learning of the Data Breach, Accellion unreasonably delayed in notifying Plaintiff and Class members of the Data Breach.

59. There is a close connection between Accellion's failure to employ reasonable security protections and the injuries suffered by Plaintiff and Class members. When individuals' sensitive personal information is stolen, they face a heightened risk of identity theft and need to: (1) purchase identity protection, monitoring, and recovery services; (2) flag asset, credit, and tax accounts for fraud, including by reporting the theft of their social security numbers to financial institutions, credit agencies, and the IRS; (3) purchase or otherwise obtain credit reports; (4) monitor credit, financial, utility, explanation of benefits, and other account statements on a monthly basis for unrecognized credit inquiries and charges; (5) place and renew credit fraud alerts on a quarterly basis; (6) contest

fraudulent charges and other forms of identity theft; (7) repair damage to credit and financial accounts; and (8) take other steps to protect themselves and recover from identity theft and fraud.

60. The policy of preventing future harm strongly disfavors application of the economic loss rule, particularly given the extremely sensitive data entrusted to Accellion. Accellion had an independent duty in tort to protect this data and thereby avoid reasonably foreseeable harm to Plaintiff and class members.

61. As a result of Accellion's negligence, Plaintiff and Class members have suffered damages that have included or may, in the future, include, without limitation: (1) loss of the opportunity to control how their personal information is used; (2) diminution in the value and use of their personal information entrusted to Accellion with the understanding that Accellion would safeguard it against theft and not allow it to be accessed and misused by third parties; (3) the compromise and theft of their personal information; (4) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and unauthorized use of financial accounts; (5) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including increased costs to use credit, credit scores, credit reports, and assets; (6) unauthorized use of compromised personal information to open new financial and other accounts; (7) continued risk to their personal information; and (8) future costs in the form of time, effort, and money they will expend to prevent, detect, contest, and repair the adverse effects of their personal information being stolen in the Data Breach.

### SECOND CAUSE OF ACTION
### Invasion of Privacy (Intrusion Upon Seclusion)

62. Plaintiff incorporates the above allegations as if fully set forth herein.

63. Plaintiff and Class members reasonably expected that the personal information they entrusted to customers of Accellion, such as their social security numbers, names, banking information, birthdates, and personal health data would be kept private and secure, and would not be disclosed to any unauthorized third party or for any improper purpose.

64. Accellion unlawfully invaded Plaintiff's and Class members' privacy rights by:

a. failing to adequately secure their personal information from disclosure to unauthorized third parties or for improper purposes;

b. enabling the disclosure of personal and sensitive facts about them in a manner highly offensive to a reasonable person; and

c. enabling the disclosure of personal and sensitive facts about them without their informed, voluntary, affirmative, and clear consent.

65. A reasonable person would find it highly offensive that Accellion, having received, collected, and stored Plaintiff's and Class members' social security numbers and other personal details, failed to protect that information from unauthorized disclosure to third parties.

66. In failing to adequately protect Plaintiff's and Class members' personal information, Accellion acted in reckless disregard of their privacy rights. Accellion knew or should have known that its ineffective security measures, and their foreseeable consequences, are highly offensive to a reasonable person in Plaintiff's position.

67. Accellion violated Plaintiff's and Class members' right to privacy under the common law.

68. Accellion's unlawful invasions of privacy damaged Plaintiff and Class members. As a direct and proximate result of Accellion's unlawful invasions of privacy, Plaintiff and Class members suffered significant anxiety and distress, and their reasonable expectations of privacy were frustrated and defeated.

**THIRD CAUSE OF ACTION**
**Washington Data Breach Notice Act**
**Wash. Rev. Code §§ 19.255.010, *et seq*.**

69. Plaintiff incorporates the above allegations as if fully set forth herein.

70. Accellion is a business within the meaning of Wash. Rev. Code. § 19.255.010(1).

71. Accellion is required to accurately notify Plaintiff and Class members following discovery or notification of the breach of their data security systems if personal information was, or is reasonably believed to have been acquired from an unauthorized person and the personal information was not secured, in the most expedient time possible and without unreasonable delay under Wash. Rev. Code § 19.255.010(1).

72. Because Accellion discovered a breach of their data systems in which Plaintiff's and Class members' personal information was, or is reasonably believed to have been, acquired by an unauthorized person and the personal information was not secured, Accellion had an obligation to disclose the data breach in a timely and accurate fashion.

73. By failing to disclose the data breach in a timely and accurate manner, Accellion violated Wash. Rev. Code § 19.255.010(1).

74. As a direct and proximate result of Accellion's violations of Wash. Rev. Code § 19.255.010(1), Plaintiff and Class members suffered damages, as described above.

75. Plaintiff and Class members seek relief under Wash. Rev. Code §§ 19.255.010(13(a) and 19.255.010(13)(b), including actual damages and injunctive relief.

**FOURTH CAUSE OF ACTION**
**Washington Consumer Protection Act,**
**Wash. Rev. Cod. Ann. §§ 19.86.020, *et seq.***

76. Plaintiff incorporates the above allegations as if fully set forth herein.

77. Accellion is a person as defined by Wash. Rev. Cod. Ann. § 19.86.010(1).

78. Accellion engaged in commerce as defined by Wash. Rev. Cod. Ann. § 19.86.010(2).

79. Accellion engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of Wash. Rev. Cod. Ann. § 19.86.020 including:

　　f.　failing to adequately secure the personal information of Plaintiff's and Class members from disclosure to unauthorized third parties or for improper purposes;

　　g.　enabling the disclosure of personal and sensitive facts about Plaintiff's and Class members in a manner highly offensive to a reasonable person;

　　h.　enabling the disclosure of personal and sensitive facts about Plaintiff's and Class members without their informed, voluntary, affirmative, and clear consent; and

　　i.　omitting, suppressing, and concealing the material fact that Accellion did not reasonably or adequately secure Plaintiff's and Class members' personal information.

80. Accellion's omissions were material because they were likely to deceive reasonable consumers about the adequacy of its data security and ability to protect the confidentiality of Plaintiff's and Class members' personal information.

81. Accellion's conduct is injurious to the public interest because it violates Wash. Rev. Cod. Ann. § 19.86.020, violates Wash. Rev. Code § 19.255.010(1), injured persons, and had or has the capacity to injure persons.

82. As a direct and proximate result of Accellion's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased imminent risk of fraud and identity theft, and loss of value of their personal information.

83. Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, injunctive relief, civil penalties, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an order:

A. certifying this case as a class action, appointing Plaintiff as a Class representative, and appointing Plaintiff's counsel to represent the Class;

B. entering judgment for Plaintiff and the Class;

C. awarding Plaintiff and Class members monetary relief;

D. ordering appropriate injunctive relief;

E. awarding pre- and post-judgment interest as prescribed by law;

F. awarding reasonable attorneys' fees and costs as permitted by law;

G. granting such further and other relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 22, 2021                    Respectfully submitted,

By: /s/ *Simon S. Grille*

Daniel C. Girard (State Bar No. 114826)
Jordan Elias (State Bar No. 228731)

| | |
|---|---|
| 1 | Adam E. Polk (State Bar No. 273000) |
| 2 | Simon Grille (State Bar No. 294914) |
|   | GIRARD SHARP LLP |
| 3 | 601 California Street, Suite 1400 |
|   | San Francisco, California 94108 |
| 4 | Telephone: (415) 981-4800 |
| 5 | Facsimile: (415) 981-4846 |
|   | Email: dgirard@girardsharp.com |
| 6 | Email: jelias@girardsharp.com |
|   | Email: apolk@girardsharp.com |
| 7 | Email: sgrille@girardsharp.com |

Beth E. Terrell, *Pro Hac Vice Forthcoming*
Jennifer Rust Murray, *Pro Hac Vice Forthcoming*
Adrienne D. McEntee, *Pro Hac Vice Forthcoming*
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450
Email: bterrell@terrellmarshall.com
Email: jmurray@terrellmarshall.com
Email: amcentee@terrellmarshall.com

*Counsel for Plaintiff and the Proposed Class*